UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON JOHN SELIS TINOCO,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Respondents. | No. 1:25-cv-01762-DC-JDP (HC)<br><br>ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 3) |

This matter is before the court on Petitioner Milton John Selis Tinoco's motion for a temporary restraining order (Doc. No. 3), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) Having considered the parties' briefing (Doc. Nos. 3, 9, 12), the court will grant Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.     Factual Background**

In 2021, Petitioner, a citizen of Nicaragua, fled Nicaragua based on the government's alleged threats to kill him and attempt to kidnap him in retaliation for his activities organizing and protesting against the government. (Doc. Nos. 3-3 at 8; 3-4 at ¶ 10.) On or about November 23, 2021, Petitioner entered the United States without inspection and was apprehended by United States Border Patrol. (Doc. Nos. 3-4 at ¶¶ 3–4; 11 at ¶ 4.) That same day, Petitioner was placed

1

1  into custody by United States Immigration and Customs Enforcement ("ICE"). (Doc. No. 11 at ¶
2  4.)
3     On December 2, 2021, ICE issued a notice of custody determination, releasing Petitioner
4  from custody pursuant to the authority contained in section 236 of the Immigration and
5  Nationality Act ("INA") (8 U.S.C. § 1226(a)) and part 236 of Title 8 of the Code of Federal
6  Regulations.[1] (Doc. No. 3-3 at 12.) The notice indicated Petitioner would be released on his own
7  recognizance, "under other conditions" and that additional documents would be provided to him.
8  (*Id.*)
9     That same day, ICE issued an order of release on recognizance ("OREC") for Petitioner.
10 (Doc. No. 12-1 at 18–21.) The OREC states Petitioner had been arrested and placed in removal
11 proceedings. (*Id.* at 18.) The OREC further states Petitioner was being released on his own
12 recognizance provided he complied with certain conditions "[i]n accordance with section 236 of
13 the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations." (*Id.*) The
14 OREC imposed several conditions, including a requirement that Petitioner not violate any local,
15 state, or federal laws or ordinances and that he report in person to the ICE office in Bakersfield,
16 California, on June 2, 2022. (Doc. Nos. 3-5 at ¶ 6; 12-1 at 18.) Following his release, Petitioner
17 moved to Bakersfield. (Doc. No. 3-5 at ¶ 2.)
18    On June 2, 2022, Petitioner arrived at the Bakersfield ICE office, and the United States
19 Department of Homeland Security ("DHS") placed him into removal proceedings, as an alien
20 present without admission or parole, and charged him with removability under section
21 212(a)(6)(A)(i) of the INA. (Doc. Nos. 3-3 at 8; 11 at ¶ 6.) That same day, ICE placed Petitioner
22 on the Intensive Supervision Appearance Program ("ISAP"), for additional monitoring
23 requirements as a condition of his release. (Doc. Nos. 3-4 at ¶ 6; 11 at ¶ 5.) Under ISAP,
24 Petitioner was instructed to check-in with ICE periodically through a smartphone application,
25 home visitations, and in person. (Doc. No. 3-4 at ¶ 7.) Respondents allege Petitioner violated his
26
27 [1] Respondents note ICE released Petitioner on or about December 3, 2021. (Doc. No. 11 at ¶ 5.)
   However, the parties' documents indicate his release occurred on December 2, 2021. (Doc. Nos.
28 11-1 at 2; 12-1 at 18.)

1  ISAP requirements by failing to check-in with ICE on October 5, 2022, January 18, 2023, and
2  April 5, 2023. (Doc. No. 11 at ¶¶ 7–9.)

3  On or about February 25, 2024, Petitioner was arrested for driving under the influence.
4  (Doc. Nos. 3-4 at ¶ 11; 11 at ¶ 10.) Petitioner ultimately pled no contest to wet reckless driving
5  and was sentenced to one year of probation and one day in custody. (Doc. No. 3-4 at ¶ 11.)
6  Because of his arrest, Petitioner failed to check-in with ICE and missed reporting on time. (Doc.
7  No. 3-5 at ¶ 9.) A couple of days after his arrest, Petitioner reported in person to the Bakersfield
8  ICE office. (Doc. No. 3-4 at ¶ 12.)  An ICE officer mentioned that he knew of Petitioner's arrest
9  and noted "that things happen." (*Id*.) ICE did not re-detain Petitioner, instead, Petitioner was
10 placed on an ankle monitor. (Doc. Nos. 3-4 at ¶ 12; 3-5 at ¶11.)

11 About a month and a half later, Petitioner's ankle monitor was removed because it was
12 hurting his skin, and Petitioner was provided a wristwatch to use to check in with ICE. (Doc. No.
13 3-5 at ¶ 11.) Soon after receiving the watch, Petitioner alleges he repeatedly encountered
14 technical issues with the watch, including not receiving a notification for a check-in request on
15 October 16, 2025. (Doc. Nos. 3-4 at ¶¶ 8, 13; 3-5 at ¶ 13.) Petitioner consistently reported these
16 issues to ISAP and his case manager and was not told that there were any concerns about his
17 compliance with his check-in requirement. (Doc. No. 3-4 at ¶ 8; 3-5 at ¶ 13.) Around February
18 2025, Petitioner went to the Bakersfield ICE office, and an ICE officer did not mention that
19 Petitioner had any compliance issues. (Doc. No. 3-5 at ¶ 14.) However, Respondents allege
20 Petitioner failed to check-in with ICE on December 25, 2024, and November 2, 2025. (Doc. No.
21 11 at ¶¶ 11–12.)

22 Following his placement into removal proceedings, Petitioner submitted an application for
23 asylum within one year of his arrival to the United States and was granted work authorization.
24 (Doc. No. 3-4 at ¶ 9.) After obtaining work authorization, Petitioner first worked as a human
25 resources clerk for Grimmway Farms. (Doc. No. 3-5 at ¶ 2.) Petitioner then worked full time as a
26 patient coordinator for the Skin Cancer Institute and part time as a music teacher. (*Id*.) During his
27 time out of custody, Petitioner spent time with family and friends and became involved in a
28 church community. (*Id*. at ¶ 23.)

3

1        On November 5, 2025, Petitioner appeared for an in-person appointment at the ISAP
2   Bakersfield office and was arrested by ICE shortly after his arrival and taken to the ICE
3   Bakersfield office. (Doc. No. 3-4 at ¶ 14; 11 at ¶ 13.) Later that night, Petitioner was transferred
4   to the California City Detention Center, where he is currently detained. (Doc. No. 3-5 at ¶ 18.)
5        After his detainment, Petitioner requested a custody redetermination pursuant to 8 C.F.R.
6   § 1236. (Doc. No. 3-3 at 6.) On November 28, 2025, the immigration judge denied Petitioner's
7   request for a bond hearing on jurisdictional grounds. (*See Id*. citing *Matter of Yajure Hurtado*, 29
8   I&N Dec. 216 (BIA 2025)).
9   **B.      Procedural Background**
10       On December 5, 2025, Petitioner filed a petition for writ of habeas corpus. (Doc. No. 1.)
11  Petitioner raises the following claims against Respondents Kristi Noem, Pamela Bondi, Todd
12  Lyons, Sergio Albarran, Christopher Chestnut, Executive Office for Immigration Review
13  ("EOIR"), ICE and DHS ("Respondents"): (1) violation of 8 U.S.C. § 1226(a); (2) violation of
14  DHS and EOIR regulations; (3) violation of the Administrative Procedures Act; and (4) violation
15  of his substantive and procedural due process rights under the Fifth Amendment. (*Id*. at ¶¶ 57–
16  77.)
17       The next day, Petitioner filed the pending motion for a temporary restraining order. (Doc.
18  No. 3.) In his pending motion, Petitioner asks the court to order his immediate release from
19  custody. (Doc. No. 3-2 at 6.) Petitioner also asks the court to enjoin Respondents from re-
20  detaining him unless they have provided him with a pre-deprivation hearing pursuant to 8 U.S.C.
21  § 1226(a) at which Respondents will bear the burden of demonstrating to a neutral decisionmaker
22  by clear and convincing evidence "that material changed circumstances since Petitioner's 2021
23  recognizance release from ICE custody justify his re-detention." (*Id*.) Further, Petitioner asks the
24  court to enjoin Respondents from transferring him outside the Eastern District while this action is
25  /////
26  /////
27  /////
28  /////

pending to preserve the court's jurisdiction.[2] (*Id.*)

On December 8, 2025, the court issued a briefing schedule on Petitioner's motion. (Doc. No. 4.) The following day, the court directed Respondents to substantively address whether any provision of law or fact in this case would distinguish it from this court's decision in *Labrador-Prato v. Noem et al.*, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025), and other similar cases previously decided by this court, or indicate that the matter is not substantively distinguishable. (Doc. No. 5.)

Respondents filed a timely opposition to Petitioner's motion. (Doc. No. 9.) Therein, Respondents acknowledge this case shares factual and legal similarities *to Labrador-Prato*. (*Id.* at 1.) However, Respondents contend the cases are different because the petitioner in *Labrador-Prato* had "no criminal history [or] disciplinary infractions during her detention" and here, "Petitioner repeatedly violated terms of his release and was arrested for driving under the influence." (*Id.*) On December 11, 2025, Respondents filed a declaration and exhibits in support of their opposition. (Doc. No. 11.) On December 12, 2025, Petitioner filed a timely reply to Respondents' opposition. (Doc. No. 12.)

## LEGAL STANDARDS

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction

---

[2] Petitioner provides no authority to support his request to enjoin Respondents from transferring him outside the Eastern District while this action is pending. Because "[t]he court need not make an order preserving its jurisdiction" and Petitioner is being provided immediate release, the court will not address Petitioner's request to enjoin Respondents from transferring him. *Cajina v. Wofford*, No. 25-cv-01566-DAD-AC, 2025 WL 3251083, at *2, n. 1 (E.D. Cal. Nov. 21, 2025) (citing *Y.G.H. v. Trump*, 787 F. Supp. 3d 1097, 1105 (E.D. Cal. 2025)).

1  is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is
2  the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th
3  Cir. 2017).

4        A party seeking injunctive relief must make a showing on all four prongs of the *Winter*
5  factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th
6  Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction
7  is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a
8  clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968,
9  972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and
10 exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle*
11 *& Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see*
12 *also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly
13 go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F.
14 Supp. 3d 1177, 1185 (C.D. Cal. 2015).

15                                   **DISCUSSION**

16 **A.**    **Likelihood of Success on the Merits**

17       1.    <u>Statutory Framework</u>

18       Petitioner argues he is likely to succeed on the merits of his claims because he has not
19 received a bond hearing before a neutral adjudicator and remains detained, which exceeds the
20 government's statutory authority under section 1226(a). (Doc. No. 3-2 at 10.) Respondents argue
21 Petitioner is not entitled to a bond hearing because he is subject to mandatory detention under
22 section 1225. (Doc. No. 9 at 4.)

23       The complex statutory framework governing the detention and removal of inadmissible
24 noncitizens in this country is at issue here. Sections 1225 and 1226 govern the detention of
25 inadmissible noncitizens who have been placed in removal proceedings. 8 U.S.C. §§ 1225, 1226.
26 Section 1226(a) is the "usual removal process" for inadmissible noncitizens. *Dep't of Homeland*
27 *Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). The noncitizen's removal commences with the
28 filing of a Notice to Appear with the Immigration Court, initiated under 8 U.S.C. § 1229(a). *Ortiz*

*Donis v. Chestnut*, No. 25-cv-01228-JLT-SAB, 2025 WL 2879514, at *3 (E.D. Cal. Oct. 9, 2025). The removal process provides for an evidentiary hearing before an immigration judge to allow the noncitizen to show he should not be removed. *Thuraissigiam*, 591 U.S. at 108. The noncitizen is permitted to apply for asylum if he would be persecuted if returned to his home country. *Id*. (citing 8 U.S. § 1229a(b)(4); 8 C.F.R. § 1240.11(c)(2020).) If asylum is not granted, and the noncitizen is ordered removed, he can appeal the order to the Board of Immigration Appeals. *Id*. (citing 8 U.S. §§ 1229a(c)(5), 1252(a)).

Section 1226 provides a discretionary detention scheme while removal proceedings are pending. 8 U.S.C. § 1226. Specifically, during the pendency of removal proceedings, the government may continue to detain the individual or may release him on bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B). When a person is apprehended under section 1226, an ICE officer makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen is detained under section 1226(a), he is entitled to a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

As to noncitizens seeking admission into the United States, section 1225 provides for mandatory detention of certain individuals and, in some cases, expedited removal. 8 U.S.C. § 1225; see also *Ortiz Donis*, 2025 WL 2879514, at *4 ("While '§ 1226 applies to aliens already present in the United States,' U.S. immigration law also 'authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2),' a process that provides for expedited removal.") (citing *Jennings*, 583 U.S. at 303.) Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a

7

proceeding under section 1229a of this title.³

An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

Until this year, DHS has "applied [section] 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). According to Petitioner, on July 8, 2025, DHS issued a memo to all employees of ICE stating that it had revisited its legal position on detention and release authorities and "that all noncitizens who entered the United States without inspection shall now be deemed 'applicants for admission' and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." (Doc. No. 1 at ¶¶ 38–39.) Following this development, DHS began directing federal immigration officials to seek expedited removal of noncitizens pursuant to section 1225(b)(2). *Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *5 (S.D. Cal. Sept. 3, 2025); *Salcedo Aceros*, 2025 WL 2637503, at *4.

In their opposition, Respondents reiterate the government's position that section 1225 applies broadly to all noncitizens, including Petitioner, who have not been lawfully admitted, regardless of their physical presence in the country. (Doc. No. 9 at 4.) However, the legal argument Respondents rely upon to support the government's position that section 1225 applies here has been consistently rejected by a majority of courts in this district and courts across the country. *See Valencia Zapata v. Kaiser,* No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sep. 26, 2025) (citing *Salcedo Aceros*, 2025 WL 2637503, at *8 (collecting cases). Instead, those courts have generally held that section 1226 rather than section 1225 is the appropriate section to apply in cases in which a noncitizen is already living in the United States. *See C.A.R.V.*

---

³ Subparagraph (B) of 8 U.S.C. § 1225(b)(2) sets forth exceptions to subparagraph (A). Subparagraph (C) of the same section addresses the [treatment] of [noncitizens] arriving from contiguous territory." 8 U.S.C. § 1225 b)(2)(C). Neither subparagraph appears to apply here.

*v. Wofford*, No. 25-cv-01395-JLT-SKO, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 1, 2025) (finding section 1226 applied when "petitioner ha[d] been present in the United States for approximately four years and was released on his own recognizance well before Respondents adopted the new interpretation of the governing statutes"); *see Bernardo Aquino v. Larose*, No. 25-cv-02904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) ("The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen . . . who has resided in the United States for many years.") (citing cases).

The majority view rejects the government's new interpretation of section 1225 as the applicable immigration detention authority for all inadmissible noncitizens. (Doc. No. 11 at 3.) Indeed, Petitioner was specifically released in accordance with section 236 of the INA [section 1226]. (Doc. No. 12-1 at 18.) "Having elected to proceed with full removal proceedings under § 1226, Respondents cannot now reverse course and institute § 1225 expedited removal proceedings." *Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025). Accordingly, Petitioner is likely subject to the discretionary detention scheme set forth in section 1226.

   2. <u>Due Process</u>

Respondents contend the failure to provide Petitioner a bond hearing does not constitute a violation of due process because Petitioner cannot establish a statutory right to a bond hearing. (Doc. No. 9 at 5.) However, as noted above, Petitioner has a statutory right to a bond hearing under 1226. Moreover, Petitioner's present detention likely violates his due process rights under the Fifth Amendment.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. It is firmly established that these protections extend to noncitizens present in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Wong Wing v. U.S.*, 163 U.S. 228, 238 (1896) ("It must be concluded that all

9

persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law.").

Courts examine procedural due process claims in two steps. *Berrios v. Albarran*, No. 25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty interest under the Due Process Clause exists. *Id*. The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id*.

The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary. *See Zadvydas*, 533 U.S. at 693. Since Petitioner has a protected liberty interest, the court must determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To make that determination, the court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Diaz*, 53 F. 4th at 1206–07 (applying the *Mathews* test to a procedural due process challenge to a detention under 8 U.S.C. § 1226, explaining that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

Turning to the first *Mathews* factor, Petitioner has a private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner was out of custody for almost four years prior to his re-detention. (Doc. No. 3-4 at ¶¶ 4, 14.) During those four years, Petitioner was gainfully employed as a human resources clerk, patient coordinator, and music teacher. (Doc. No. 3-5 at ¶ 2.) Petitioner also spent time with family and friends, became involved in a church community, and applied for asylum.

(*Id.* at ¶¶ 16, 23.) The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty. *See Doe v Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Thus, this factor favors a finding that Petitioner's private interest has been affected by his detention.

The second *Mathews* factor, the risk of erroneous deprivation to Petitioner, also weighs in Petitioner's favor. *See A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention is "nonpunitive in purpose and effect" and is justified when a noncitizen presents as a danger to the community or risk of flight. *Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

Petitioner has been detained for over a month without being provided a bond hearing before an immigration judge to evaluate his dangerousness and/or flight risk. (Doc. No. 3-4 at ¶ 14.) Although Respondents highlight in their opposition that Petitioner repeatedly violated the terms of his release and was arrested for driving under the influence (Doc. No. 9 at 1), no neutral arbiter under section 1226 has determined whether those facts show that Petitioner is a flight risk or danger to the community. *Cf. Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If Respondents wish to establish that re-detention is warranted by raising the effect of . . . Petitioner-Plaintiff's six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); *see also Cajina*, 2025 WL 3251083, at *1, 6 (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence); *Nolasco-Gomez v. Noem*, No. 25-cv-02217-RFB-DJA, 2025 WL 3514758 (D. Nev. Dec. 8, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being arrested for driving under the influence). Thus, the court concludes "the probable value of additional procedural safeguards" including a bond hearing before Petitioner was detained is high. *A.E.*, 2025 WL 1424382, at *5.

Turning to the third *Mathews* factor, the court acknowledges the government has an interest in the steady enforcement of its immigration laws but recognizes that the government's interest in detaining Petitioner without any procedural protections is substantially "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Custody hearings in immigration court are routine and impose a "minimal" cost on the government. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without [any procedural protections] is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors favoring Petitioner show a likelihood of success on the merits that due process requires a bond hearing prior to his re-detention. Therefore, the court finds that Petitioner has established a likelihood of success on the merits of his due process claim.

**B.     Irreparable Harm**

It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999.

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.     Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

/////

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted); *see also Preminger v. Principi,* 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering irreparable harm as a result.

On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining Petitioner[] if it 'ultimately demonstrates to a neutral decisionmaker' that their detention is necessary to prevent flight or danger to the community." *Valencia Zapata*, 2025 WL 2741654, at *13 (quoting *Salcedo Aceros*, 2025 WL 2637503, at *14). Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating Petitioner's due process rights, which is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) (finding "the INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

**D.     Bond**

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or

13

1    her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919).

2    Here, Plaintiff asks that no bond be required. (Doc. No. 3-2 at 32.) Respondents do not address Petitioner's request. (*See* Doc. No. 9.) The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

**CONCLUSION**

For the reasons explained above,

1. Petitioner Milton John Selis Tinoco's motion for a temporary restraining order (Doc. No. 3) is GRANTED;

2. Petitioner Milton John Selis Tinoco Isabo shall be released immediately from the Respondents' custody. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

3. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered; and

/////
/////
/////
/////
/////
/////
/////
/////
/////

4. Respondents are ORDERED TO SHOW CAUSE no later than **December 18, 2025**, as to why this court should not issue a preliminary injunction on the same terms as this order. Petitioner may file an opposition by no later than **December 19, 2025**. Respondents may file a reply to Petitioner's opposition by no later than **December 22, 2025**. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

IT IS SO ORDERED.

Dated: __**December 13, 2025**__  _____
Dena Coggins
United States District Judge

15